Good afternoon, Your Honors. I represent the appellate Naaman Frank. The District Court erred twice, first by compelling arbitration under an unconscionable agreement and second by refusing to vacate an award that resulted from fundamentally unfair discovery rulings. We asked the Court to reverse the order compelling arbitration and remand for a jury trial. In the alternative, we asked the Court to vacate the award and remand for a new arbitration with adequate discovery. Tesla admits that the agreement was procedurally unconscionable, a contract of adhesion presented by a party with superior bargaining power on a take-it-or-leave-it basis. That's not in dispute. It was also procedurally unconscionable because it referred to JAM rules, the employment rules, that it did not include. Now, Tesla relies on the Baltazar case to say that it's not—an agreement is not unconscionable if they fail to provide the rules. Well, I think their reliance on that case is misguided, and the Baltazar case— Was it just the mere fact that there was no incorporation of the JAMS rule, or did you challenge any particular aspect of any rule? Well, actually, we did, because—and that's why I think it's important, because the Baltazar case talks about, in that case, the challenge—the rules that weren't provided weren't anything being challenged. But if it was, or if it were, then that would be important, and it might make a difference. Here it was, because here we have an arbitration clause that says we're entitled to adequate discovery, all rights and remedies permitted by—that you could get in a court. So I think those are contradictory in itself. And then it refers to the JAMS rules. Well, if you look at the JAMS rules, the JAMS rules say—the default rules, and the Davis case tells us we have to look at the default rules—that you get one deposition, and you can get additional depositions with reasonable need. So we have adequate discovery, all rights and remedies the court gives, reasonable need, and then we have an arbitrator issuing a discovery order that says we have to make an affirmative showing of good cause. So that is the heart of what we're claiming as to the substantive unconscionability here is— But whether it's good cause or reasonable need, if you need it, you get it, right? And did you have a showing of needing additional discovery? Well, I think it's a different standard. I think it's an easier standard, reasonable need, and the problem is, when it says you have all rights and remedies that are available in court, one of your rights to being in the United States District Court for the Central District of California is you get 10 depositions. And we submitted a discovery plan that had 12 depositions on it, and the arbitrator limited us to three more with an affirmative showing of good cause. But we were actually denied two depositions, as it turns out, were material because just before the arbitration, they produced documents that had Troy Jones' fingerprints all over this case, and as a result of which, the court, the arbitrator, ordered him to testify in the arbitration. We also have emails where Elon Musk was copying— Okay, so let's just take each one of them. So Jones was not deposed, but he then did testify? Yes, Your Honor. Okay, so where is the prejudice from—is there prejudice associated with Jones? Yes, Your Honor. I believe there is prejudice because we all know a deposition is much broader in scope than trial testimony. The relevancy standard in a deposition is relevant or reasonably— But were there areas of inquiry that you think you were precluded from exploring in the trial testimony? I believe that there had been a deposition. We would have gotten into areas regarding the systemic discrimination that Tesla has. We would have gotten into issues regarding other situations when the arbitration clause was not enforced. In fact, there was a case that Tesla didn't tell the lower court about that was in existence at the time when they did the request for judicial notice telling the court about all the cases they won. The Barraza against Tesla case, the court refused to enforce their arbitration agreement on the very grounds we're claiming unconscionability, and the Court of Appeal affirmed that, and I think it was a material omission for Tesla to give the lower court the impression that their agreement is always enforced when it isn't, and it was unconscionable, and I believe that it would have made a material difference to have the deposition of both Elon Musk—and I asked for a one-hour deposition of Elon Musk. What does Elon Musk know about this situation? Well, what we believe is that he personally made the decision to terminate. What we now know is he was personally copied on an email my client sent, and one of the other people sent an email blind copying Elon Musk. We also know that the two people that were intimately involved in the termination, Ali Aribalo and Troy Jones, that Elon Musk—they directly reported to Elon Musk, and we believe he was the one that set this tone. I also have anecdotal information that caused me to believe it from people I know that worked there that said that any time a matter of press comes up, Elon personally will light up the switchboard. So we believe he made the decision, and a one-hour deposition, how much of an imposition is— Even in setting aside arbitration, I mean, even in federal court, there's limits on the ability to depose the CEO of a company, and I kind of wonder whether those wouldn't also be implicated even if you weren't in arbitration? Okay, well, I think that we have a contract that says that we're entitled to the information. I think you're talking about the Apex Doctrine. We have a contract that says we're entitled to the discovery, but two, I think we met the Apex Doctrine. We have him personally involved, so it's the arbitration—I can't see the exact wording, but I think you have to show that they were personally involved and you can't get the information from another source. I think that's the test. I may be slightly off. When Jones testified, were you denied particular questions to ask? When Troy Jones was, is that what you said, Your Honor? I don't recall, but I don't think so. I think the arbitrator gave us just wide leeway. Free reign. How about the PMK deposition? Because it seemed that you didn't take that. We didn't take what? The PMK deposition that was made available? That's correct, Your Honor. Okay. So, I mean, that was some additional discovery that was available that also could have laid the foundation for other discovery if you had pursued that? That's correct, Your Honor. I think that could have led to other discovery, but the reason we wanted Troy Jones and Elon is because my client says Troy Jones was on the call where he was terminated. Troy Jones signed a declaration, and it's interesting when you look at that declaration they signed that they convinced the court, the arbitrator, not to compel his deposition. It's very misleading by what we now know. He was directly involved in the decision to terminate him behind the scenes because we got those emails, but they signed a declaration that he wasn't in that meeting, but my client says he was in that meeting. So, again, why weren't we able to depose him? Right, but I think that that goes to Judge Tunheim's question. You were allowed to cross-examine, right, to explore these additional areas. So what I'm hearing you say is that, well, had we had the opportunity to depose him for an hour, there will be additional issues that you didn't get to explore adequately in cross-examination such as systemic issues of discrimination throughout the company, but it seems strange if that's a proffered area that you wouldn't take advantage of a PMK deposition. And just a slight correction, we asked for a one-hour deposition of Elon Musk, not of Troy Jones. We were asking for a longer deposition of Troy Jones. You know, I don't know we didn't do the PMK deposition. It might have led to some of that information, but, again, I am more interested in the specific reasons of Naaman Frank's termination, what went into the decision. Interestingly, at the same time he's fired, Susie Hatsis is terminated, which my client says was because she gave him permission to appear in the commercial. So she gives him permission, we claim she gave him permission to appear in the commercial. They're both fired at about the same time, I think within hours of each other, and Troy Jones is making the decision. I want to, a PMK is not going to be telling me what's going through Troy Jones's head, and if, in fact, she was terminated because she gave him permission to appear in the Super Bowl Sunday commercial, I think that would be a material fact that would bear on the wrongful termination claim, because then in the arbitration, they denied that. They said that that wasn't why she was terminated. I mean, it's amazing, and it's also kind of ironic the day after the arbitration ended, they fired, well, I assume they fired, Ari Arabello, and Troy Jones is no longer there. So now all these people that were employees are no longer employees. Was there other, so you mentioned Troy Jones and Elon Musk. Was there other witnesses that you wanted to depose, that you asked to depose, but you're unable to? No. No. We were entitled, we took our three depositions, and we were, we thought those were the two that were material, so we could have, we did bring motions to compel on those two, and we were denied it, but we did not on others, we were not denied others. We didn't ask for others. Other than these issues with the limitations on discovery, are there other grounds for vacating this decision? Yes, because the arbitrator did not allow us to put forth our case. That one of the grounds for vacation is whether or not the arbitrator refused to hear material evidence relating to the case, and we believe the arbitrator did not hear material evidence relating to the case, because she granted summary judgment on the racial discrimination claims, and as it turns out, racial discrimination claims, the cases tell us, are hard to prove. That a lot of times it's inferential evidence or statistical evidence, and the people that I did depose, managers, I'd ask how many black managers do you have, how many black people in management? None. One maybe. I don't know. I can't tell if somebody's black or not, and we have our client testifying, our client's black, that when he first started in a low-level position, there was a customer, a black customer, who was complaining, why is the only black person I see here washing the cars? So they go to Naaman and tell him, hey, impersonate a manager to appease this African-American customer. So there's substantial evidence, there's statistical evidence, inferential evidence, and one of his reviews- Is this evidence that the arbitrator heard? Well, I don't know. Is hearing it in the form of a declaration in a motion for summary judgment, hearing it? I mean, you can't assess credibility. I mean, again, the standard on summary judgment, is there any tribal issue of material fact? And the fact that they have no or limited managers, our client was a football player as well. I can't remember if he was a pro football player, but played for college. He's a big guy. In one of his interviews, the manager wrote that he's intimidating. He took that as a racial comment, because he's a large African-American. And so all of these things together, I think we were entitled to put on our case and have the arbitrator assess the credibility instead of killing a case at a pleading stage when nobody could testify. So I do believe it's more than just permitting discovery, and I think it's very prejudicial and goes to the heart of our case. On unconscionability, you started with that. Didn't the district court excise part of the arbitration agreement as substantively unconscionable, and didn't that take care of your concern about that? No. Yes, the court severed that portion from the agreement, but we do not think it took care of that part, because one, we're contending the limitation on discovery is also a portion of it. But we're also saying that the court should not sever an agreement when it's based on a conscious drafting by the company to give themselves an advantage. And in fact, one of the cases that Tesla relies on throughout its brief, I'm trying to find it, the Ramirez versus Charter Communication case, the California Supreme Court case, refused to sever unconscionable terms from an employment agreement because the court emphasized that severance is not a routine tool for rescuing an employer-drafted adhesion contract. It's a discretionary remedy that should be denied when multiple indicators suggest the agreement was drafted to unfairly advantage the employer. We also have an employment agreement that did not have a severance clause. Usually a contract will say if one term of this agreement is not enforceable, it can be severed. This one didn't have that term. So we have an employer consciously drafting an arbitration agreement to give itself an advantage in litigation by, one, making it non-mutual, and the Barraza case also said the confidentiality terms and the lack of representative action were also provisions that made it unconscionable. But the limitation on discovery in an employment case like this, the employer has all the information it needs. It has the employees. It has the files. It has the records. The employee doesn't. So to keep them on a higher playing field, they limit the right of a discovery. And so I don't think they should be rewarded by severing one portion of an agreement when there are other portions, and we shouldn't reward an employer for taking an unfair advantage of an employee in an arbitration agreement. What is your argument that the arbitrator committed misconduct? I think you made that argument. I did, Your Honor. It was that, one, she granted summary judgment on the racial discrimination claims, so didn't The same issues. Exactly. And I see my time is almost out, so I don't want to, unless Your Honors have any questions. We're good. Thank you. Thank you. And, Madam Clerk, I did reserve two minutes for, thank you. You're actually almost out of time, but I'll put two minutes back on the clock for you, for rebuttal. Oh, okay. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, Ray Cardozo for Appellee Tesla. And I'd like to start with your question, Judge Wynn, because the District Court asked the exact same question, and this is at Excerpts of Record 863. As I understand it, Mr. Frank's challenge to the arbitration, he's not challenging anything in the Jams Rule specifically, and my learned friend, Mr. Bowen, responded, correct. So concedes, he's just challenging the failure to attach the rules, he's not challenging anything in the rules itself. Based upon that concession, the District Court aptly and correctly ruled, and this is at Excerpts of Record 25, at the May 12, 2022 hearing, Frank's counsel confirmed that Frank does not argue that any of the Jams Rules are unconscionable, and that Balthazar and Wynn represent controlling precedent, because those two cases, one being the California Supreme Court, which has the last word on this issue, dealt with that exact same issue and said, if you're not challenging the rules themselves, there is no unconscionability issue. And the District Court's words were, correctly, this is controlling precedent on the issue. And it's rather curious because- But there's a couple of issues, and I suppose they're interrelated, so it depends on how your counsel's characterizing it or how we characterize the issue. One is the mere failure to incorporate the Jams Rules, right? Because there are cases where that's been problematic. I don't think those cases are applicable here, because those cases involve a challenge to an aspect of a Jams Rule. Here, it's not quite on all fours because of that concession that you pointed out. But he does argue that discovery was unfairly restricted to three per side. And so, why don't you get to that question and address his claim that he established, whether it's reasonable need for additional depositions or good cause to show additional depositions are needed. I'm not sure I see the distinction between those two standards, but let's give his argument that one is slightly lower than the other. Can you then tackle his argument that you should have additional depositions? And if I unpack both parts of what you said, just to cover off on the first point, Balthazar looked at those earlier cases and said, unless you're challenging the rules specifically, those cases have no weight. No, I understand. So with respect to the limitation of discovery, I want to contrast what the California Supreme Court says is the test. As long as the agreement allows the, this is from the Ramirez case at page 507, allows the arbitrator to order additional discovery as needed to allow a full and fair exploration of the dispute. As long as you can get the discovery if you need it to fully present your claims. That's the California law standard. Now look at what this arbitration agreement said. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute. That's nearly word for word the California Supreme Court standard. And so the arbitrator, number one, what the arbitrator later does in applying that is a case specific exercise of discretion. The agreement allowed the arbitrator to do it. But then now we're spilling over into more motion to vacate land and motion to compel arbitration when we're talking about what the arbitrator actually did with that. So why was Troy Jones not deposed, but then he was a witness at the trial? So there was an accommodation. He had this erroneous notion that Troy Jones was on a call and an accommodation was struck. The court will give you a declaration that says he's not on the call under oath and you get to call him at trial and cross-examine him. And then this is what the district court had to say about this Troy Jones argument because I think your honors asked the same question today. Frank essentially makes a bare bones allegation of prejudice, but does not explain in any substantive way how the lack of this deposition testimony caused a prejudice. So we had a full and fair opportunity to examine the witness and go into anything he wanted at the hearing. And yet to the district court, he didn't point to that testimony. I'm not even sure if Troy Jones' testimony is even in the record, which is another problem. But he didn't point to anything in that testimony and show how this deposition hamstrung him. What the district court said is you get three to start plus a PMK depo and then come back if you need more. He never even exhausted what the district court allowed because he didn't even take the PMK depo. So for example, with Mr. Musk under the well-settled Apex depo, Mr. Musk is last in line. You only get that depo if you first take the PMK and then show something's missing under California law. He went, he jumped the shark, said I got to have Musk now, but that's not the California law. A California court wouldn't allow that. This arbitrator engaged in a reasonable exercise of discretion and said you haven't made the requisite showing, which brings me back to another fundamental theme. Every single thing he's arguing about with regard to the arbitrator is a garden variety exercise of discretion. The one thing we know for certain is that this court doesn't review errors of facts of law. So when we're talking about exceeding powers, we're not talking about you got the summary judgment ruling wrong. There was a tribal issue of fact. We're talking about we didn't allow the briefing. We didn't curtail the evidence. We had an unfair process. You didn't get to make the summary judgment standard. We know the arbitrator in good faith applied that standard because it found a tribal issue of fact on some claims and no tribal issue of fact with others. It was just a garden variety exercise of the discretion that's committed to the arbitrator under the arbitration agreement and isn't reviewable by this court because that's ordinary error of fact of law review. Your Honor, I want to come back to your question about severance. And again, I want to go back to the district court because the district court unusually nailed each of these issues. On excerpts of Record 864, this is the hearing on the motion to compel arbitration. The district court asked if you could respond to the Farrar case, which seems to be on all fours with this case because that's a California law case that had the exact same essentially provision that was the one unconscionable piece found by the court. And they found it was sufficiently distinct you could sever it. My learned friend, Mr. Boehm, goes on and doesn't even answer the question, address the case. It's not addressed in the briefing to this court, the California law case right on point on that issue. The district court asked him about it, he's got no answer. But this court in the Publon case summarized the California law on severance on this point really well. Distinguishing the Ramirez case that he cited, the standard is the good cannot be separated from the bad or rather the bad enters into and permeates the whole contract so that none of it can be said to be good. This one provision about proprietary inventions and agreement obviously is not that and can easily be severed. And Publon, this court went on and discussed legions of California cases that have found almost identical provisions severable. And that comes back to another point. It's really rather remarkable when you go through Publon, which rejected every single argument my learned friend has made. Contract of adhesion, limitations on discovery, failure to attach the arbitration rules, severance. On point takes it apart every one of those issues. Every single argument he's made in the briefing is rejected by this case, which is a decision of this court, and it's not even mentioned in either brief. Every single argument he's made touches on a point that has been addressed with precision and is settled under the law. It's ordinary error of fact review raised on the vacatur. It's what I would call garden variety unconscionability that the California courts have squarely said it's not enough to invalidate an arbitration agreement. Really what all that's been done, when you go through the district court's well-reasoned decision, he hasn't laid a glove on any of that reasoning or correct analysis. He's just taken what he presented to the district court and lobbed it over to your honors, recycled it. There's no cogent argument for reversal here. Well, a lot of people make arguments here that didn't work in a district court, so that's not particularly unusual. But it doesn't really confront the reasoning. When you just kind of do the same thing and the district court says, you've made this concession and that concession dooms you under controlling law, and you don't even cite or discuss the controlling law that the district court cites. I think that's a little different. I think when you go to the next rung, you have to deal with that a little bit. Thank you, Counselor. Thank you, Your Honor. I just briefly want to address a couple of points. First, on the severance issue, I cited or referred the court to the Ramirez case, a case they cite, Tesla cites extensively in its brief. It's a 2024 California Supreme Court case, so that would be controlling. The misconduct, we're arguing, is refusal to hear evidence that is pertinent and material. And the reason the Troy Jones trial testimony was permitted but not the deposition is about, I don't know if it was a week or two weeks before the arbitration, Tesla produced a bunch of documents. In there, it showed Troy Jones was substantially and personally involved in the termination. Tesla tried to prevent him from testifying at the arbitration proceeding, and the judge in a ruling said, we get to have him at the arbitration. So it's not like they made some concession or agreed. They tried to prevent him from testifying. But because of documents produced just before the proceeding, he was all over it. The court allowed it. And I see I'm out of time, so if there's any questions, I'll be happy to answer them. Otherwise, I'll submit. Thank you very much, counsel, to both sides for your arguments this afternoon. The matter is submitted, and the court is in recess until tomorrow morning. Thank you, Your Honor. All rise. This court for this session stands adjourned.
judges: NGUYEN, BRESS, Tunheim